IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOHN E. PREVOST, II                                                                               PLAINTIFF
ADC #144749

v.                                              2:17cv00144-KGB-JJV

VALORIE WESTBROOK,
CO, EARU; *et al.*                                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

**I.     INTRODUCTION**

John E. Prevost, II ("Plaintiff"), an inmate at the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) He alleges Defendants violated his First, Eighth, and Fourteenth Amendment rights by assigning him to work on the field utility squad due to his inability to work on Saturdays, which he observes as a holy day of rest. (*Id*. at 4-7.) Plaintiff seeks compensatory and punitive damages as well as unspecified declaratory and injunctive relief. (*Id*. at 8.) The remaining Defendants, Gaylon Lay and Moses Jackson, III, were, at all relevant times, the Warden and Deputy Warden, respectively, at the East Arkansas Regional Unit.[1] (Doc. Nos. 28-12 at 1, 28-14 at 1.) They have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. Nos. 28-30.) Plaintiff has not responded, and this matter is now ripe for a decision. After careful review, and for the following reasons, I find summary judgment is appropriate and Plaintiff's claims should be DISMISSED.

---

[1] Plaintiff's claims against Defendants Valorie Westbrook and Jeremy Andrews were previously dismissed on Plaintiff's Motion. (Doc. Nos. 25-26.)

**II.    FACTS**

According to Plaintiff's Complaint, he was placed on the field utility squad by Classification Officer Westbrook on July 26, 2016, without having appeared before the classification committee. (Doc. No. 2 at 5.) He contends Westbrook made this assignment based solely on his inability to work on Saturdays due to his religion. (*Id*.) Two days later, Defendants Lay and Jackson "went along with" Westbrook and placed Plaintiff on the field utility squad permanently. (*Id*. at 5-6.) Plaintiff alleges he was assigned to the field utility squad for six months without ever appearing before the classification committee. (*Id*. at 6.) He suggests he should have been assigned to a job more appropriate for his class, which was I-C. (*Id*. at 5-6.)

Defendants have submitted evidence shedding more light on Plaintiff's allegations. Plaintiff explained in his deposition that he was previously assigned to work in the kitchen and had never before been asked to work on a Saturday. (Doc. No. 28-1 at 2.) On June 25, 2016,[2] the kitchen captain, Tonya Timmons, told Plaintiff he would need to work the following Saturday. (*Id*.) When Plaintiff informed her of his religious objection to working on Saturdays, she said she had never received any information from the chaplain about a religious exemption. (*Id*.) Therefore, Plaintiff filed a grievance requesting that the chaplain send the required paperwork to Timmons. (*Id*. at 4, Doc. No. 28-2 at 1.) In response to the grievance, the chaplain noted Plaintiff had never requested a religious accommodation and was listed as a member of the Church of Christ. (Doc. No. 28-2 at 1.) Plaintiff then submitted his change of religion form, requesting to be listed as a member of the House of Yahweh, to the chaplain. (Doc. No. 28-1 at 6.) The paperwork was completed and forwarded to Timmons the same day. (*Id*.) Timmons responded

---

[2] Although Plaintiff said in his deposition this happened on July 25, his grievance shows it actually happened on June 25. (Doc. Nos. 28-1 at 2, 28-2 at 1.)

3

that Plaintiff would not be required to work on Saturdays. (Doc. No. 28-2 at 3.) Plaintiff continued to work in the kitchen until July 26, 2016, when he was temporarily assigned to the field utility squad. (Doc. No. 28-5 at 1.)

That same day, July 26, 2016, Westbrook requested that Plaintiff be taken before the classification committee. (Doc. No. 28-2 at 5-7.) He appeared before the committee on August 2, 2016, at which point the committee unanimously decided to assign him to field utility on a permanent basis. (*Id*., Doc. Nos. 28-1 at 14-15, 28-12 at 2.) Committee members told Plaintiff that if he could find a job that would not require him to work on Saturdays, he could ask the supervisor to request that he be reassigned. (Doc. No. 28-1 at 15-16.) In December 2016, the supervisor of the industry department requested that Plaintiff be transferred to work there. (Doc. Nos. 28-1 at 17-18, 28-6 at 1, 28-7 at 1, 28-8 at 1.) Plaintiff testified in his deposition that other department supervisors had also requested reassignment on his behalf. (Doc. No. 28-1 at 19.) On December 20, 2016, Plaintiff appeared before the classification committee and his job assignment was changed to barracks porter, one of the transfers he had requested. (*Id*. at 18-19, Doc. No. 28-11 at 1.)

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### IV. ANALYSIS

#### A. Official Capacity Claims for Money Damages

Plaintiff has sued Defendants in both their official and personal capacities. (Doc. No. 2 at 2.) Plaintiff's damages claims against Defendants in their official capacities are barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend Plaintiff's official capacity claims for money damages against Defendants be dismissed.

B.  **Personal Capacity Claims for Money Damages**

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 30 at 9.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*. Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

1.        Supervisor Liability

As an initial matter, Defendants point out Plaintiff's Complaint places the blame for his job reassignment primarily on Officer Westbrook. (Doc. No. 2 at 5.) The Complaint's allegations against Defendants Lay and Jackson focus mostly on their roles as prison administrators. Plaintiff did provide more context in his deposition, wherein he stated Defendant Lay was responsible for making the initial decision to temporarily place him on the field utility squad. (Doc. No. 28-1 at 13.) As for Defendant Jackson, however, Plaintiff stated he had sued him "[b]ecause he was the assistant warden" and because he was the person who informed Plaintiff of Defendant Lay's decision to reassign him. (*Id*. at 20-21.)

As Defendant Jackson explains in his Declaration, he informed Plaintiff he was being temporarily assigned to field utility "at the direction of Warden Gaylon Lay." (Doc. No. 28-14 at 1.) Defendant Jackson also states he was not a member of the classification committee and did not participate in the vote to change Plaintiff's job assignment permanently. (*Id*. at 2.) Thus, Defendant Jackson "had nothing to do with [Plaintiff's] removal from the kitchen, temporary placement on field utility, or his permanent placement on field utility." (*Id*.) To the extent Plaintiff attempts to hold Defendant Jackson responsible based solely on his position as Deputy Warden, that claim fails. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (there is no *respondeat superior* liability under § 1983); *see also Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."). Because Defendant Jackson may not be held liable on the basis of *respondeat superior* and because Plaintiff has failed to demonstrate any personal involvement on his behalf, Plaintiff's claims against Defendant Jackson should be dismissed.

2. Eighth Amendment Claim

Although Plaintiff's Complaint summarily concludes his job reassignment violated his Eighth Amendment rights (Doc. No. 2 at 6-7), it does not allege his placement on field utility constituted cruel and unusual punishment or that Defendants acted with deliberate indifference. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (to establish an Eighth Amendment violation, the defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities and must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner). Instead, Plaintiff seems to suggest he should not have been placed on field utility because of his status as a Class I-C inmate. (Doc. No. 2 at 5-6.) But ADC policy does not restrict field utility jobs to inmates of lower classes; rather, any inmate can be assigned to field utility "as a matter of institutional need or at the inmate's request." (Doc. No. 28-13 at 2.) Defendant Lay testifies as follows in his Declaration:

> All inmates at the ADC are required to work at a job unless they have a medical restriction that prevents them from working. Field utility is not a punishment and any inmate can be assigned to field utility. . . . At the EARU, there was always a need to have inmates to work in field utility or on the hoe squad because of the vast amount of row crops, gardens, fields, and edible crops that the EARU provides for the ADC.

(Doc. No. 28-12 at 2.) Defendant Jackson's Declaration says the same. (Doc. No. 28-14 at 2-3.) Simply put, the fact that field utility was not Plaintiff's preferred job, or even the preferred job of most inmates, does not make it cruel and unusual punishment. Plaintiff has not established a violation of his Eighth Amendment rights.

3. Fourteenth Amendment Claim

Plaintiff's Complaint alleges his job reassignment infringed upon a liberty interest in violation of the Fourteenth Amendment. (Doc. No. 2 at 6.) The Due Process Clause does not

8

protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). States may under certain circumstances create liberty interests that are protected by the Due Process Clause, but those interests are generally limited to freedom from restraints which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84. The United States Court of Appeals for the Eighth Circuit has held that removal from a job assignment does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life so as to give rise to a constitutionally protected liberty interest. *Sanchez v. Earls*, 534 Fed. App'x 577, 579 (8th Cir. 2013) (unpublished per curiam) (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam) (an inmate has "no constitutional right to a particular prison job")). Accordingly, Plaintiff cannot demonstrate a Fourteenth Amendment violation.

        4.      First Amendment Retaliation Claim

Although the crux of Plaintiff's Complaint appears to be that his job reassignment infringed upon his First Amendment right to the free exercise of his religion, he also mentions retaliation. (Doc. No. 2 at 5-6.) He suggests he was retaliated against for "protecting his religion and religious beliefs and practices." (*Id.* at 6.) To demonstrate retaliation, a plaintiff must show (1) he engaged in a protected activity; (2) defendants responded with adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Spencer v. Jackson Cty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). An act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983, even if the act, when taken for a different reason, would have been proper. *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990).

As Defendants point out, "speculative and conclusory" allegations of retaliation are insufficient to state a claim. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). Defendants have produced evidence in support of their Motion for Summary Judgment showing Plaintiff was placed on field utility to *protect* the practice of his religion, not to retaliate against him for seeking to do so. As Defendant Lay explains in his Declaration, he directed that Plaintiff be removed from kitchen duty and assigned to another job "[t]o prevent Prevost from again being called to work on the weekend," as the kitchen does not close on the weekends. (Doc. No. 28-12 at 1.) Defendant Lay states he took "immediate action to ensure that [his] staff did not violate Prevost's religious freedom by requiring him to work on Saturday."[3] (*Id*. at 3.) Plaintiff has not rebutted this evidence. At the summary judgment stage, Plaintiff's bare allegation of retaliation is insufficient. "When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact." *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569, 11 S.W.3d 531, 536 (2000)). In other words, the respondent "may not rest on mere allegations or pleading denials, but must 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. at 910 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Without more, Plaintiff's allegation that Defendants retaliated against him is not enough to demonstrate a genuine issue for trial.

---

[3] Additionally, Defendant Jackson states as follows in his Declaration: "Warden Lay never stated, suggested, or implied that Prevost's job change was due to Prevost's religious objection to working on Saturday." (Doc. No. 28-14 at 2.)

5. First Amendment Free Exercise Claim

Plaintiff alleges his reassignment to the field utility squad based on his inability to work on Saturdays violated his First Amendment right to the free exercise of his religion. (Doc. No. 2 at 5.) It is well settled that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id*. (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). These limitations arise both from the fact of incarceration as well as from "valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id*. (citing *Pell*, 417 U.S. at 822-23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)). The evaluation of those penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." *Id*. at 349 (quoting *Bell*, 441 U.S. at 562).

In recognition of this need for deference to prison officials, the United States Supreme Court has held prison regulations alleged to infringe on constitutional rights are to be judged under a "reasonableness" test. *Id*. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). There are four factors to be considered in making this determination: (1) whether there is a "valid rational connection" between the prison

regulation and the government interest justifying it; (2) whether there is an alternative means available to the prisoner to exercise the right; (3) whether an accommodation would have "a significant 'ripple effect'" on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting *Turner*, 482 U.S. at 89-91).

Here, each factor demonstrates the decision to reassign Plaintiff from kitchen duty to the field utility squad was reasonable under the circumstances. First, as Defendant Lay explains in his Declaration, the classification committee is "designed to match inmates with jobs that will serve the institutional and security needs of the prison while ensuring that inmates are in jobs that do not conflict with medical or religious restrictions." (Doc. No. 28-12 at 2.) Moreover, assigning inmates to jobs that do not conflict with religious restrictions "eliminates needless conflicts between inmates and staff when work assignments are issued" and "ensures that inmates are given the opportunity to practice their religion without interference from security staff that may be unaware of their religious affiliations." (*Id*. at 3.) Clearly, Defendants had a legitimate interest in placing Plaintiff in a job that did not require him to work on Saturdays and furthered that interest by placing him on field utility, where he would never be asked to work on a Saturday. Defendants likewise had an interest in filling jobs that required Saturday work, like kitchen duty, with those inmates who could perform those responsibilities without a religious conflict.

Second, Plaintiff's removal from kitchen duty and placement on the field utility squad was the act that afforded him a means to exercise his religion, as it allowed him to observe the Sabbath. Additionally, as Plaintiff stated in his deposition, members of the classification committee told

him how he might receive a different job assignment; he later took advantage of this option and was able to secure a more desirable job.

Third, assuming Plaintiff would have preferred to remain on kitchen duty and simply been exempt from working on Saturdays, this would have had a significant ripple effect on other inmates, staff, and prison operations. As Defendant Lay states, "[i]nmate kitchen duty requires Saturday duty because the kitchen does not close at the prison for weekends or holidays." (Doc. No. 28-12 at 1.) And fourth, Plaintiff's religious restriction was immediately accommodated with an alternative job that did not conflict with his observance of the Sabbath.

In sum, the very action Plaintiff complains of – being removed from kitchen duty and placed on the field utility squad – was taken in furtherance of his First Amendment rights. When he was first asked to work on a Saturday, Defendant Lay immediately directed that he be removed from kitchen duty and sent to the classification committee "to ensure that he had a job assignment that would not interfere with his religion or create a lapse in the provision of services that are needed at the prison." (Doc. No. 28-12 at 1-2.) Contrary to Plaintiff's allegation that he was forced to work on the field utility squad for six months without appearing before the classification committee, the evidence clearly shows he appeared before the committee on August 2, 2016, five business days after the initial reassignment. (*Id.* at 2, Doc. Nos. 28-1 at 14, 28-2 at 5-7.) The classification committee unanimously voted to keep him on field utility and instructed him on how to apply for a different job. (Doc. Nos. 28-1 at 15-16, 28-2 at 5-7.) Importantly, Plaintiff acknowledged he had never been forced to work on a Saturday and had had no issues with anyone trying to make him do so since the kitchen duty incident that led to his reassignment. (Doc. No. 28-1 at 7-8.) In light of this evidence, Defendants did not violate Plaintiff's First Amendment right to the free exercise of his religion. Instead, they clearly tried to accommodate him.

The facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of his First, Eighth, or Fourteenth Amendment rights. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's claims against them in their individual capacities, and I recommend those claims be dismissed.

### C. Claims for Declaratory and Injunctive Relief

Plaintiff lists "Declaratory & Injunctive Relief" in his prayer for relief but does not specify what type of declaratory and injunctive relief he seeks. (Doc. No. 2 at 8.) As Defendants point out, Plaintiff is no longer subject to the conditions complained of, as it is undisputed he was reassigned from field utility to barracks porter in December 2016. (Doc. No. 28-1 at 19.) Moreover, Plaintiff does not allege he has since suffered or will suffer any continuing infringement on his religious freedom. Accordingly, his claims for declaratory and injunctive relief should be dismissed. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (when a prisoner is no longer subject to the conditions complained of and has not shown any real or immediate threat of being wronged again, claims for injunctive relief are moot and there is no standing to seek declaratory relief).

### V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 28) be GRANTED.

2. Plaintiff's claims against Defendants Lay and Jackson be DISMISSED WITH PREJUDICE.

3. Plaintiff's cause of action be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 22nd day of October, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE